## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4083 | **DATE** | 1/16/2002 |
| **CASE TITLE** | VANESSA MYART vs. DOUBLETREE HOTELS CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Doubletree's motion for summary judgment [10-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | number of notices | | | |
| ✓ | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | JAN 1 7 2002 | | | 22 |
| | Docketing to mail notices. | | date docketed | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | 1/16/2002 | | | |
| | | | | date mailed notice | | |
| SB | courtroom deputy's initials | FILED-703 02 JAN 16 PM 3:57 | | CB mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | | |



DOCKETED

JAN 1 7 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA MYART | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 4083 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| DOUBLETREE HOTELS CORP. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Vanessa Myart ("Myart") sues Doubletree Corporation ("Doubletree") for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Doubletree moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### BACKGROUND

**I.      Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon". Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); Local Rule 56.1(b)(3)(B).

1

Myart's responses to paragraphs 12, 28, 29, 30, 33, 34, 44, 46, 48 and 51 fail to cite to record evidence supporting the denials. Myart's denials of paragraphs 42, 43, 45, 49 and 52 are similarly flawed as they are based, in whole or in part, on unauthenticated documents lacking the requisite foundation. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)(evidence submitted at summary judgment must be admissible at trial under Federal Rules of Evidence). Accordingly, Doubletree's factual statements are deemed admitted to the extent that Myart's denials fail to comply with Local Rule 56.1.

## II. Facts

All facts are undisputed unless otherwise noted. Doubletree hired Myart as a security officer for its Chicago hotel in April 1999. As a security officer, Myart's duties included observing the lobby area of the hotel, attending to individuals with medical issues, patrolling hotel stairwells and floors, making keys and name tags for co-workers and shipping guest items. During the relevant time period, Randy Herring, Director of Safety and Security, was Myart's direct supervisor.

In November 1999, Herring completed a 90-day performance evaluation for Myart, which was delayed "in order to provide [Myart] with some additional training and [to] improve [her] overall evaluation scores." Although Myart was given an additional three months to improve her performance, she continued to be late for work, was unprepared for the start of her shift, failed to maintain her post in the hotel lobby and took excessive breaks. Herring placed Myart on probation for 30 days as a result of her poor performance. Myart thereafter improved her performance.

On July 2, 2000, Herring's supervisor, Pat Liston, Director of Engineering, issued Myart a verbal warning for violating Doubletree's policy requiring a security officer to provide two hours notice of an absence. Myart reported her absence five minutes prior to the start of her scheduled

shift. On July 15, 2000, Doubletree issued Myart a written warning for excessive tardiness. Doubletree also placed Myart on a 90-day warning period, instructing her to "report to work on time, complete all work assignments on time, [and] comply with [Doubletree] Policy at all times."

On September 23, 2000, Herring completed a performance review for Myart. Herring noted that Myart's performance in the areas of attendance, report writing, flexibility and security department procedures "continue[d] to fall below the required standards." Herring then placed Myart on probation for 30 days.

On October 19, 2000, Myart was 30 minutes late for a mandatory staff meeting. She received a written warning for her tardiness indicating that her next violation would result in a 3-day suspension. On December 11, 2000, Myart failed to notify Doubletree of her absence two hours before the start of her scheduled shift. Herring issued Myart a written warning rather than suspending her employment because a severe snowstorm also delayed other employees.

On January 13, 2001, Myart, who was working at the security desk, called fellow security officer Clarence Battle over the radio to retrieve an item from the lost and found. Battle exited the men's bathroom near the security desk and stated "girl, you caught me while I still had my thing in my hand." At the time, Tyesha Blackmond, former desk attendant, was near the security desk.

When Herring walked by the security desk, Myart immediately complained to Herring that Battle had been "sexually harassing her." Shortly after speaking with Myart, Herring spoke with Battle, who admitted he made the comment. Battle also informed Herring that Myart had responded by telling him she would "cut the mother fucker off," meaning Battle's penis. Battle denied making any other inappropriate comments to Myart or any other co-worker. Herring informed Battle that he would investigate the matter, but that Battle would most likely be suspended.

3

Herring spoke with Blackmond, who informed Herring that Myart had told her about Battle's comment as he exited the bathroom. Blackmond told Herring that Myart responded, "I don't care. I'll cut the mother-fucker off." Blackmond also told Herring that Myart told her "[Battle] is going to be suspended." Thereafter, Herring spoke with Helmer Burrows, a security officer, who informed Herring that Myart had told her that she had made a sexual harassment complaint against Battle and "[t]hat [the] mother fucker is going to be fired." Herring had warned Myart in the past about inappropriately discussing sensitive matters.

Herring did not work on January 14 and 15, 2001. Upon his return to work, Herring notified Judith Talbott, Director of Human Resources, of Myart's complaint. As Myart was not scheduled to work again until January 17th, Herring and Talbott attempted to call Myart at home twice, but were unsuccessful in reaching her.

At Herring's request, Myart prepared an incident report recounting Battle's comment as he exited the men's bathroom, as well as other incidents that occurred during the prior week. In the incident report, Myart complained that Battle asked Myart to "sit on my lap and whatever comes up we will talk about." Myart also complained that Battle told her, "you better watch out before I stick you" after she accidently touched him. Myart interpreted Battle's comment to mean that he was going to stick her with his penis. Myart relayed that Battle had told a co-worker in her presence, "don't lick your tongue out like that, it makes me horny." Battle then told the co-worker to "go and pick up her black [drawers]," meaning "underwear." Myart complained that Battle's comments made her feel uncomfortable.

On January 19, 2001, Herring and Talbott met with Battle in Talbott's office. Battle admitted he made the comment as he exited the men's bathroom. Herring and Talbott suspended Battle for three days without pay for improper conduct.

That same day, Herring and Talbott met with Myart. During the meeting, Myart denied making the comment to Battle. Herring did not believe Myart's denial. Herring and Talbott suspended Myart for three days with pay for breach of confidentiality and using profane language.

On January 23, 2001, Janine Silzer, Senior Catering Manager, received a telephone call from Berretta Davis, Program Coordinator for Nacore International. Davis informed Silzer that Doubletree had shipped computer items for Nacore in November 2000, but had failed to insure the items for $3,500.00 each as requested. The computer items were damaged during shipping, resulting in a $943.40 loss. Davis told Silzer that she had been working with the shipper, United Parcel Service ("UPS"), to resolve the matter, but had been unsuccessful. Davis asked Silzer to look into the matter. That same day, Silzer contacted Cara Spalla, Assistant General Manager, to inform her that the Nacore goods had been damaged during shipment. Davis' telephone call was the first time that Silzer and subsequently, Spalla, became aware of the problem with the Nacore shipment.

The Nacore Shipment Request Form indicated Nacore had requested that two boxes be insured for $3,500.00 each. The UPS billing forms indicated that Doubletree had failed to insure the items. Spalla asked Herring to identify the security officer who was responsible for completing the Nacore shipping forms. At that time, Spalla informed Herring some disciplinary action must be taken against the employee at fault.

Herring determined Myart was the only security officer on duty on November 3, 2000, who could complete shipping and receiving forms. Both Spalla and Herring notified Talbott of the issue.

Spalla, Herring and Talbott compared the handwriting on the Nacore shipping forms with Myart's handwriting and determined Myart had completed the Nacore shipping forms.

Herring confronted Myart with the Nacore shipping forms. Myart admitted that she completed the tracking numbers on the UPS form, but did not recognize the shipping forms. Myart is not certain whether her handwriting appears on the forms, but admits it is possible that it is her handwriting. In consultation with Spalla and John Powers, General Manager, Talbott and Herring suspended and ultimately terminated Myart's employment for the shipping error, as well as her prior performance record.

## DISCUSSION

### I.      Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may

depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II.    Myart's Retaliation Claim

Title VII prohibits employers from retaliating against employees who oppose allegedly discriminatory practices. *See* 42 U.S.C. § 2000e-3(a). In order to prevail on a claim of retaliation, Myart must offer either direct evidence or indirect evidence of retaliation. *Smart v. Ball State University*, 189 F.3d 437, 439 (7th Cir. 1996). As Myart does not offer any direct evidence of retaliation, Myart must prove her case indirectly under the burden-shifting method set forth in *McDonnell Douglas.*

## A.    Prima Facie Case

To establish a *prima facie* case of retaliation under Title VII, Myart must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action. *Worth v. Tyler*, 2001 WL 1657331, at *11 (7th Cir. Dec. 27, 2001). If Myart establishes a *prima facie* case, the burden of production shifts to Doubletree to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Doubletree sets forth a legitimate justification, the burden then shifts back to Myart to prove that Doubletree's reason is a mere pretext for retaliation. *Id.* The ultimate burden of persuasion remains at all times with Myart. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

## 1.    Statutorily Protected Expression

Doubletree contends that Myart cannot establish the first element of her *prima facie* case because she could not have reasonably believed that she was opposing an unlawful employment

practice under Title VII. An actual violation of Title VII by the employer is not a prerequisite for a retaliation claim. *Hamner v. St. Vincent Hospital and Heath Care Center*, 224 F.3d 701, 706 (7th Cir. 2000). The employee need only have a sincere and reasonable belief that she is challenging conduct covered by Title VII. *Id.*

Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" *Clark County School District v. Breeden*, 121 S.Ct. 1508, 1509 (2001), *quoting Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998). "Workplace conduct is not measured in isolation; instead 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id., quoting Faragher*, 524 U.S. at 787-88. There is no magic number of incidents required to establish a Title VII hostile environment sexual harassment claim. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000). Even one act suffices if egregious. *Id.*

Doubletree admits in its Rule 56.1 statement of facts ("Def. Facts") as well as its response to Myart's Rule 56.1 statement of additional facts ("Def. Resp.") that Myart "lodge[d] a *sexual harassment* complaint" and notified her supervisor "immediately following the *sexually harassing* remark of January 13, 2001." Def. Facts, Section III; Def. Resp., ¶ 31 (emphasis added). Thereafter, Myart submitted a written complaint detailing four more comments made by Battle during the week, including one instance where Battle threatened to "stick" Myart with his penis. Construing all

evidence in Myart's favor, a reasonable jury could find Myart sincerely and reasonably believed that Battle's sexual comments over the one week period leading up to her complaint violated Title VII.

## 2.    Adverse Employment Action

Doubletree next argues that Myart's first suspension with pay is not an adverse employment action under Title VII.   An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  In most cases, a tangible employment action inflicts direct economic harm.  *Id.*  Therefore, reprimands and poor performance reviews are not considered adverse employment actions for purposes of Title VII.  *See, e.g., Oest v. Illinois Department of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001)(oral and written reprimands); *Smart*, 89 F.3d at 442 (negative performance reviews).

Myart's suspension without pay is similar to the progressive discipline found not to be an adverse employment action in *Oest* and *Smart*.  Indeed, Myart does not provide any evidence that the suspension with pay significantly changed her employment status through economic harm or otherwise.  Without such evidence, Myart cannot prove a *prima facie* case of retaliation based on the suspension with pay.  However, Myart can prove the second element of her retaliation claim through her subsequent suspension and termination. *See Worth*, 2001 WL 1657331, at *12 ("there is no question that termination constitutes an adverse action under Title VII").

## 3.    Causation

In order to shift the burden of production to Doubletree, Myart must also establish a causal connection between the protected activity and the adverse employment action.  The timing of the

discharge may provide the necessary causal nexus. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). A close temporal connection between the two events "is generally enough to satisfy the third element of the *prima facie* test." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997). Additional proof is necessary only when the inference of retaliation is weakened through the passage of time. *Oest*, 2340 F.3d at 616.

Myart verbally complained on January 13, 2001. Doubletree received Myart's written complaint on January 19, 2001. On January 26, 2001, Doubletree suspended and ultimately terminated Myart's employment effective January 29, 2001. The short period of time that expired between Myart's complaint and ultimate termination, which also included Myart's first 3-day suspension, is sufficient to provide the causal connection required to establish a *prima facie* case of retaliation.

## B.    Legitimate Non-Discriminatory Reason

Myart does not dispute that Doubletree offered legitimate non-discriminatory reasons for Myart's termination. Doubletree claims that Myart was terminated for a shipping error, which resulted in a $943.40 loss to Doubletree, coupled with Myart's history of poor performance. The burden then shifts back to Myart to show that Doubletree's reasons for her termination are pretextual.

## C.    Pretext

When an employer offers multiple reasons for its employment decision, the employee must show that all of the proffered reasons are pretextual. *Ghosh v. Indiana Dep't of Environmental Mgmt.*, 192 F.3d 1087, 1091-92 (7th Cir. 1999). Myart may establish pretext either directly, by showing Doubletree's decision to terminate was more likely than not motivated by discriminatory reasons, or indirectly, by showing that Doubletree's reasons are unworthy of belief. *See Texas Dep't*

*of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Worth*, 2001 WL 1657331, at *12. "The indirect method requires some showing that (1) the defendant's explanation has no basis in fact or (2) the explanation was not the real reason, or (3) the reason stated was insufficient to warrant the termination." *Worth*, 2001 WL 1657331, at *12. Myart has not presented any direct evidence of pretext. Therefore, Myart bears the burden of showing that Doubletree lied about its reasons for terminating her.

Myart fails to offer any evidence that Doubletree did not honestly believe that she was responsible for the $943.40 loss resulting from the Nacore shipping error. Myart herself admitted that Talbott and Herring believed that she was responsible for the mistake. (Def. Facts, ¶ 51). Even more telling, however, is the fact that Myart does not deny making the error. To the contrary, Myart admits that she completed the tracking numbers on the UPS form. Myart also admits that the handwriting on the shipping documents may be her handwriting.

Moreover, Myart has not produced evidence that Doubletree treated any employee differently for committing a similar error. *See Johnson v. West*, 218 F.3d 725, 733 (7th Cir. 2000)(pretext may be shown by evidence that other similarly situated employees outside protected class committed similar infractions but were not similarly disciplined). Although Myart claims that other employees committed similar shipping mistakes, but were not terminated, she fails to demonstrate that either Herring or Talbott were aware of the mistakes and failed to take corrective action. Without this necessary link, Myart cannot establish that Doubletree treated similarly situated employees differently.

Nevertheless, Myart presented evidence that her performance prior to her complaint may not have been the real reason for her termination. In fact, Doubletree concedes that "Herring testified

11

that prior to [Myart's] complaint he had no intention of terminating her" for her prior performance problems. (Def. Resp., p. 3). However, Myart has not established that Doubletree's reasons for terminating her are so "intertwined" or "so fishy" as to call into doubt Doubletree's belief that the shipping error justified Myart's termination. *See Wolf v. Buss America, Inc.*, 77 F.3d 914, 923 (7th Cir. 1996), *citing Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995). Therefore, Myart has ultimately failed to carry her burden of establishing pretext.

## CONCLUSION

Doubletree's motion for summary judgment is granted.

January 16, 2002

ENTER:

Suzanne B. Conlon
United States District Judge